20 cr 90 PAM

# UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INFORMATION** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | 18 U.S.C. § 1343 |
| v. | ) | |
| | ) | |
| JEFFREY FRANK HORNER, | ) | |
| | ) | |
| Defendant. | ) | |

## THE UNITED STATES ATTORNEY CHARGES THAT:

## **INTRODUCTION**

At times relevant to the Information:

*Administration of Benefits for Disabled Veterans and Others*

1.    The United States Department of Veterans Affairs ("VA") provided financial benefits to eligible veterans.

2.    As part of the VA, the Veterans Benefits Administration ("VBA") administers programs that provide benefits to eligible veterans and their families, including educational assistance, home loans, disability compensation, pensions, and burial and death benefits.

3.    To assist a veteran who was unable to manage his finances, the VA appointed a fiduciary to administer these benefits for the veteran's benefit.   As the legal custodian of the veteran's benefits, the fiduciary was required to use the benefits according to the beneficiary's best interests.   A fiduciary was required to administer funds according to VA

SCANNED

MAY 27 2020

U.S. DISTRICT COURT MPLS

regulations, provide proof of compliance with fiduciary requirements, and inform the VA of certain changes to the beneficiary's estate.

4.     A fiduciary was required to sign a fiduciary agreement prior to being certified as a fiduciary.   In that agreement, the fiduciary acknowledged, among other things, that the fiduciary must:

  a.   Use the funds for the beneficiary and his or her recognized dependent;
  b.   Submit periodic accountings of all of the beneficiary's funds received and used;
  c.   Not commingle beneficiary funds with the fiduciary's or anyone else's;
  d.   Not borrow, loan, or gift funds belonging to the beneficiary; and
  e.   Not receive any form of remuneration or payment in connection with rendering fiduciary services on behalf of the beneficiary except for an authorized commission.

5.     The United States Social Security Administration ("SSA") provided financial benefits eligible people, including those suffering from a disability.

6.     The United States Office of Personnel Management ("OPM") provided disability retirement benefits through the Federal Employees Retirement System ("FERS").


SCANNED
MAY ⚬ 2020
U.S. DISTRICT COURT MPLS

2

*Defendant JEFFREY FRANK HORNER*

7.     Defendant **JEFFREY FRANK HORNER** resided in the District of Minnesota and elsewhere, including Wisconsin and Georgia.

8.     Defendant **HORNER** owned and operated HORNER PAYEE SERVICES and RENROH Enterprises LLC from at least in and around 2013 until in and around 2018.

9.     Defendant **HORNER** served as a fiduciary for disabled veterans who resided in the District of Minnesota and elsewhere.   In his capacity as their fiduciary, defendant **HORNER** was responsible for managing the veterans' VA benefits.   Defendant **HORNER** was also responsible for administering benefits the victims received from SSA and OPM.

*The Victims*

10.     Victim A, whose identity is known to the United States Attorney, resided in East Bethel, Minnesota and elsewhere.   Victim A was a veteran who suffered from bipolar disorder.

11.     Victim B, whose identity is known to the United States Attorney, resided in Minneapolis, Minnesota.   Victim B was a veteran who suffered from Parkinson's disease and schizoaffective disorder.

12.     Victim C, whose identity is known to the United States Attorney, resided in Minneapolis, Minnesota and elsewhere.   Victim A was a veteran who suffered from depression, among other illnesses.

13.     Victim D, whose identity is known to the United States Attorney, was Victim A's son and was eligible to receive Victim A's VA benefits.   Victim D was also eligible to receive his own SSA benefits.   Victim D resided in Iowa.

*The Scheme to Defraud*

14.     Beginning no later than in and around April 2010, and continuing until at least in and around September 2018, in the State and District of Minnesota and elsewhere, the defendant,

**JEFFREY FRANK HORNER,**

did knowingly and unlawfully devise and execute a scheme to defraud the VA, the SSA, and the OPM, and veterans entitled to these agencies' benefits, including Victims A, B, C, and D, and to obtain money and property from them by means of materially false and fraudulent pretenses, representations, promises, and material omissions, as described below.

15.     It was part of the scheme that defendant **HORNER** gained access to the victims' government funds by becoming their representative, as fiduciary for veterans receiving VA benefits and as representative payee for recipients of OPM and SSA funds.

16.     In furtherance of the scheme, defendant **HORNER** established and used at least 12 bank accounts in his own name and in the names of his businesses, including

4

HORNER PAYEE SERVICES and RENROH Enterprises LLC, to transfer and conceal funds intended for Victims A, B, C, and D, which he diverted to his own use.

17.     Defendant **HORNER** then submitted false and fraudulent documentation to government agencies claiming to have expended the money for the benefit and at the direction of the victims.   In some cases, defendant **HORNER** submitted documentation for expenditures for the victims' benefit, when in fact defendant **HORNER** intended to and did spend these funds for his personal use.   Defendant **HORNER** submitted the false and fraudulent forms and supporting documentation to government agencies including the VA through multiple means, including by email.

18.     In furtherance of the scheme, defendant **HORNER** transmitted and caused to be transmitted writings, signs, signals, pictures, and sounds by means of wire communication in interstate and foreign commerce, including checks defendant **HORNER** wrote for his own benefit and then concealed from the issuing governmental agencies. Some examples of these checks are set forth in the table below and described in the paragraphs that follow:

| Date of Check (on or about) | Victim | Payee/Purpose Claimed by Horner in False and Fraudulent Documentation to VA | Amount (approximate) |
|---|---|---|---|
| November 5, 2012 | Victim B | American Cancer Society | $15,000 |
| March 11, 2013 | Victim B | Minnesota Military Family Foundation | $5,000 |
| June 4, 2013 | Victim A | Victim A | $7,200 |
| July 5, 2013 | Victim D | Victim D | $7,500 |
| February 6, 2014 | Victim B | American Red Cross | $8,500 |
| June 12, 2014 | Victim C | Victim C's landlord | $4,000 |
| September 2, 2014 | Victim A | Victim A car loan payment | $2,500 |

| June 30, 2015 | Victim B | Wounded Warrior Foundation | $2,016.53 |
| August 21, 2015 | Victim B | American Cancer Society | $15,000 |

19.     Between on or about September 24, 2012, and September 3, 2018, the defendant **HORNER** diverted at least $365,374.69, in government funds intended for the victims to his personal use.   These included approximately $233,438.76, in benefits from the VA, approximately $84,219.16, in benefits from the SSA, and approximately $47,716.77, from the OPM intended for the benefit of Victims A, B, C, and D, as further described below.

*Defendant Horner Steals Funds Intended for the Benefit of Victim A*

20.     For the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, defendant **HORNER** assumed the role of fiduciary for Victim A on or about April 26, 2010.   In this capacity, defendant **HORNER** had access to VA, SSA, and OPM funds intended for the benefit of Victim A and Victim A's son, Victim D.

21.     On or about December 30, 2013, defendant **HORNER** submitted a signed VA form accounting for expenditures for the benefit of Victim A and Victim A's son between 2012 and 2013.   In that form, defendant **HORNER** falsely claimed to have spent approximately $7,200, for the care of Victim A's son, when in fact, he diverted these funds to his personal use.   On or about March 12, 2014, defendant **HORNER** submitted a signed amended VA form accounting for the same period and a letter, which falsely claimed that the $7,200 expenditure was for Victim A's son's care, and that Victim A also received SSA

and OPM funds, which he deposited into savings.

22.    On or about January 14, 2015, defendant **HORNER** sent an email from Georgia to a VA examiner in Wisconsin containing a signed VA form accounting for expenditures of funds intended for Victim A's benefit between 2013 and 2014.   On or about March 19, 2015, defendant **HORNER** submitted via email an amended, signed VA form accounting for expenditures that included the period from in or around 2013 and 2014. Defendant **HORNER** falsely claimed that at least $19,668, of these expenditures were for Victim A's benefit—specifically for Christmas expenditures, travel and vacation, furniture, and clothing, among other things.   In fact, as defendant **HORNER** well knew, he diverted those funds to his personal use.

23.    On or about August 17, 2016, defendant **HORNER** submitted a VA form purporting to have made payments of approximately $6,625, in VA and SSA funds for Victim A's benefit for a car payment and gifts.   In fact, as defendant **HORNER** well knew, he diverted these funds to his personal use.

24.    On or about October 5, 2016, December 6, 2016, and March 30, 2017, defendant **HORNER** sent falsified bank account statements to a VA examiner located in Des Moines, Iowa via email in support of his false accounting of expenditures of Victim A's funds.

25.    On or about December 14, 2016, defendant **HORNER** emailed the same examiner a false list of expenditures for the benefit of Victim A in support of his accounting.

7

26.     Defendant **HORNER** continued to take Victim A's OPM benefits for his personal use during this period.  For example, on or about August 2, 2016, defendant **HORNER** took approximately $1,450, intended for the benefit of Victim A for his own benefit by transferring the funds to a realty company to pay for his own rental housing. Defendant **HORNER** also transferred to himself approximately $700 in Victim's A's funds on or about November 3, 2017, and approximately $400 on or about September 3, 2018, which he diverted to his own personal use.

27.     In total, defendant **HORNER** diverted at least $139,942.39, in government funds intended for the benefit of Victim A and her son to his personal use over the course of the scheme.

*Defendant Horner Steals Funds Intended for the Benefit of Victim B*

28.     For the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, defendant **HORNER** assumed the role of fiduciary for Victim B on or about September 13, 2010.  In this capacity, defendant **HORNER** had access to VA funds intended for the benefit of Victim B.

29.     On or about January 8, 2013, defendant **HORNER** submitted a signed form to the VA to account for Victim B's fiduciary account for a period between 2011 and 2012. On the form, defendant **HORNER** stated, "based on the significant dollar amount held in regular checking and savings accounts, I have undertaken with the input of the VA staff and [Victim B] to increase his charitable giving."

30.     In furtherance of the scheme, defendant **HORNER** made multiple false representations to the VA that between on or about November 6, 2012, and on or about July 1, 2016, he donated more than $209,500, in funds intended to benefit Victim B to approximately 19 charitable organizations designated by Victim B.   For example, defendant **HORNER** submitted VA forms falsely attesting to these donations, as well as falsified copies of checks purporting to be previously disbursed charitable donations.   In fact, as defendant **HORNER** well knew, he only donated approximately $1,000, to approximately four designated charities, and did so using Victim A's funds, which he presented as charitable donations from Victim B.   Defendant **HORNER** diverted all of the funds he claimed were donated to charity belonging to Victim B to defendant **HORNER's** personal use.

31.     Among the false representations defendant **HORNER** made in furtherance of the scheme was on or about December 31, 2015, when defendant **HORNER** sent emails from Georgia to a VA examiner in Wisconsin containing what **HORNER** claimed were digital images of eight checks submitted as charitable donations on behalf of Victim B. Defendant **HORNER** sent modified images of the real checks to support his false claims.

32.     It was also in furtherance of the scheme that defendant **HORNER** established three certificates of deposit (CDs) in Victim B's name, which he funded with approximately $100,000, in VA funds belonging to Victim B through checks dated or about August 30, 2013.   On or about June 8, 2015, defendant **HORNER** transferred approximately $101,432.66, from these CDs (including interest) to another account in his

9

control.   Between on or about June 8, 2015, and on or about April 14, 2016, Defendant

**HORNER** transferred these funds to yet another account in his control and then diverted

them to his personal use.

33.     Defendant **HORNER** continued to draw upon his access to Victim B's

benefits for his personal use even after he knew he was no longer authorized to act as

Victim B's financial representative.   For example, on or about March 18, 2016, defendant

**HORNER** transferred approximately $1,000 in funds intended for the benefit of Victim B

via internet transfer to an account under his control for **HORNER's** personal benefit.

34.     In total, Defendant Horner diverted at least $211,432.30, in government

funds intended for Victim B's benefit to his personal use over the course of the scheme.

*Defendant Horner Steals Funds Intended for the Benefit of Victim C*

35.     For the purpose of executing and attempting to execute the above-described

scheme and artifice to defraud, defendant **HORNER** assumed the role of fiduciary for

Victim C on or about November 19, 2010.   In this capacity, defendant **HORNER** obtained

access to VA funds intended for the benefit of Victim C.

36.     On or about March 19, 2015, defendant **HORNER** sent an email from

Georgia to a VA examiner in Wisconsin containing a signed accounting for expenditure of

Victim C's funds from 2012 through 2015.   In submitting an accounting for Victim C's

funds, defendant **HORNER** falsely claimed that he paid Victim C at least $6000, for

"holiday shopping" and "household items," and Victim C's landlord for housing-related

expenses.   In fact, defendant **HORNER** diverted these funds to his own personal use.   In

10

support of this claim, defendant **HORNER** provided falsified copies for some of these expenditures, including a copy of a check for $4,000 to a VA examiner. On or about August 12, 2015, defendant **HORNER** faxed from Georgia to a VA examiner in Wisconsin a falsified copy of a check for $500 purporting to be for Victim C's landlord, when in fact, as defendant **HORNER** knew, he had taken those funds for his own benefit.

37.     In total, Defendant Horner diverted at least $6,500, in government funds intended for Victim C's benefit to his personal use over the course of the scheme.

*Defendant Horner Steals Funds Intended for the Benefit of Victim D*

38.     For the purpose of executing and attempting to execute the above-described scheme and artifice to defraud, defendant **HORNER** assumed the role of representative payee for Victim D on or before July 2, 2013. In this capacity, defendant **HORNER** had access to SSA funds intended for the benefit of Victim D.

39.     In furtherance of the scheme, between on or about July 2, 2013, and October 8, 2013, defendant **HORNER** deposited SSA funds intended for Victim D's benefit to a bank account under defendant **HORNER's** control. In total, defendant **HORNER** diverted at least $7,500 in SSA funds intended for Victim D's benefit to his personal use.

## COUNT 1
(Wire Fraud)

40.     The allegations contained in paragraphs 1 through 39 of this Information are realleged and incorporated here.

41.   On or about August 2, 2016, in the District of Minnesota and elsewhere, for the purpose of executing the scheme described above, defendant

**JEFFREY FRANK HORNER**

transmitted and caused to be transmitted writings, signs, signals, pictures, and sounds by means of wire communication in interstate and foreign commerce, a transmission causing the diversion of approximately $1,450, in funds intended for the benefit of Victim A to his own personal use.

All in violation of Title 18, United States Code, Section 1343.

## FORFEITURE ALLEGATIONS

Count 1 of this Information is incorporated here for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

As the result of the offense alleged in Count 1 of this Information, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Section 1343.

If any property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All in violation of Title 18, United States Code, Sections 1343 and 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).


Dated:   May 26, 2020                              ERICA H. MacDONALD
                                                   United States Attorney

                                                   s/ Miranda E. Dugi

                                                   BY: MIRANDA E. DUGI
                                                   Assistant United States Attorney
                                                   Attorney ID No. 5140546 (NY)